FILED
Apr 29, 2026
08:41 AM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT KNOXVILLE**

| | |
|---|---|
| **MICHAEL BRENDAN HODGE,** <br> **Employee**, <br> **v.** <br> **ALCOA, INC. and ARCONIC CORP.,** <br> **Employers,** <br> **and** <br> **AGRI GENERAL INS. CO. and** <br> **AIU INS. CO.,** <br> **Carriers.** | **Docket Nos. 2025-30-5257** <br> **2025-30-5259** <br><br> **State File Nos. 4812-2024** <br> **68507-2024** <br><br> **Judge Pamela B. Johnson** |

## EXPEDITED HEARING ORDER

Michael Hodge alleged occupational exposures and sought medical benefits including monitoring under the Workers' Compensation Law. Alcoa/Arconic denied his requests, asserting defenses of late notice, statute of limitations, and causation. For the reasons below, the Court holds Mr. Hodge is likely to prevail at a compensation hearing and grants, in part, his request for medical benefits.

### Claim History

Mr. Hodge worked for Alcoa/ Arconic from September 2002 until April 2016. He worked as a brick mason, building and rebuilding baking furnaces in the pot rooms during the smelting process for manufacturing aluminum. During this process, Mr. Hodge was exposed to coal tar pitch and other toxins.

*Medical Treatment*

In 2016, Mr. Hodge saw neurosurgeon Dr. Michael Walsh with complaints of progressive vision loss in both eyes. He also reported personality changes with irritability and headaches. Dr. Walsh reviewed a brain MRI, diagnosed a large cerebral meningioma (non-malignant brain tumor), and recommended immediate

1

surgery. Dr. Walsh later resected the meningioma and ordered outpatient rehabilitation. At that time, the cause of the brain tumor was not mentioned.

Mr. Hodge was evaluated by Dr. David Tutor, who completed an "Arconic Pension Disability Application, Arconic Physician Disability Medical Report" in 2017. He diagnosed a meningioma with significant residual cognitive deficits. Dr. Tutor noted no relationship between the condition and any claimed occupational injury or illness, and he determined that Mr. Hodge would not be able to return to work.

In the fall of 2023, Mr. Hodge began experiencing short-term memory loss and problems with attention and concentration.

On December 27, 2023, Mr. Hodge saw Dr. C.M. Salekin for an independent medical evaluation. Dr. Salekin noted that Mr. Hodge had worked around various toxins and suffered from impaired short-term memory, difficulty with attention and concentration, and shortness of breath. Dr. Salekin recommended a neuropsychiatric evaluation.

At the recommendations of Dr. Salekin, Mr. Hodge saw neurologist Dr. Mohammed Hussein in April 2024. Dr. Hussein noted minimal cognitive impairment, chronic headache syndrome, visual obscuration, history of cerebral meningioma, and intermittent confusion. He performed neurocognitive testing in May and prescribed medication management and lifestyle changes. Dr. Hussein also ordered a brain MRI, which showed residual meningioma. Dr. Hussein recommended that Mr. Hodge see Dr. Walsh for further evaluation of the "change on the MRI [b]rain regarding the meningioma."

Mr. Hodge then started treating with primary-care physician Dr. Hina Kouser, who diagnosed a history of cerebral meningioma, fatigue, chronic headache disorder, and left-eye blindness. Dr. Kouser noted that Mr. Hodge was scheduled to see a neurosurgeon for evaluation of the brain MRI findings.

Neurosurgeon Dr. Christopher Gallati evaluated Mr. Hodge on August 21, 2024. Mr. Hodge reported a history of meningioma resected in 2016, vision loss and anosmia since 2016, headaches, and memory problems. Dr. Gallati noted that Mr. Hodge's memory problems may have preceded his tumor resection. He reviewed brain MRIs from 2017 and 2024 and noted a residual tumor that had grossly increased in size since 2017. Dr. Gallati discussed surgical options, radiation, and/or observation with a follow-up MRI in one year. He told Mr. Hodge that his memory

2

problems and headaches were not related to the tumor.

A month later, at Dr. Gallati's request, Mr. Hodge saw Dr. Stephen Lowe (a former partner of Dr. Walsh, who had moved out of state) to discuss treatment options. Dr. Lowe noted that Mr. Hodge had a large meningioma with recurrence of the disease. He discussed surgical options but recommended yearly evaluations if Mr. Hodge declined surgery. To date, Mr. Hodge has not had the recommended surgery.

In February 2025, Dr. Hussein and Dr. Kouser were asked by Mr. Hodge whether they agreed with the findings and recommendations of Dr. Salekin. Dr. Hussein signed his name, writing "Yes, [he] agree[d] with the findings and recommendations of Dr. Salekin." Dr. Kouser did not sign where directed; instead she signed below her handwritten statement, "Sorry, I don't have expertise or training to comment on this."

In March 2025, Dr. Hussein completed a C-32 Standard Medical Report. He stated that Mr. Hodge suffered a meningioma and cognitive deficits secondary to aluminum exposure at work. Dr. Hussein concluded that the employment, more likely than not, was primarily responsible for the injury or primarily responsible for the need for treatment.

Mr. Hodge returned to Dr. Salekin in July 2025. Afterward, Dr. Salekin completed a C-32. He determined that Mr. Hodge's cognitive impairment and meningioma were caused by aluminum and polycyclic aromatic hydrocarbon exposure at work.

*Procedural History*

On January 4, 2024, Mr. Hodge filed a petition for benefit determination seeking benefits for impaired memory, poor attention and concentration, and shortness of breath. He identified a date of injury of December 27, 2023, and notice given on January 4, 2024. He amended his petition on September 17 and added cerebral meningioma, visual field defect, impaired memory, and loss of smell and taste. In his amended petition, he wrote his injury date was August 21, 2024, and that he gave notice on August 29. Mr. Hodge voluntarily dismissed his case on July 15, 2025.

On August 14, 2025, Alcoa/Arconic filed two reverse petitions for benefit

3

determination seeking a dismissal with prejudice.[1] It listed injury dates of June 1, 2016; December 27, 2023; and August 21, 2024. It wrote that it received notice on January 4, 2024, and August 29, 2024.

Mr. Hodge sought medical monitoring due to his occupational exposures. Specifically, he requested physician panels for neuropsychiatry, neurology, urology, cardiology, pulmonology, gastroenterology, and neurosurgery. He also asked to make his personal physician the authorized treating physician.

Alcoa/Arconic argued that Mr. Hodge's claims are barred by the statute of limitations and notice provisions. It asserted that Mr. Hodge has only shown a diagnosis of a recurrent brain tumor. He was diagnosed and became disabled from working in 2016. He did not file his petition or give notice until 2024, more than one year after the date he last worked and became disabled from working.

*Hearing Testimony*

Mr. Hodge testified he worked as a brick mason at Alcoa from August 2002 through April 12, 2016. At Alcoa, he was exposed to many toxins, including bauxite, silica, asbestos, and coal tar pitch. He was not provided protective clothing or respirators.

When he saw Dr. Walsh in 2016 and had surgery, Mr. Hodge was not told about any relationship between his tumor and his work. Although he wanted to return to work, Alcoa would not allow that. In 2023, he was doing odd jobs remodeling office spaces and met Mr. Dunaway, his attorney, who recommended he see Dr. Salekin due to observed memory difficulties. Mr. Hodge said that before seeing Dr. Salekin, he did not know that his problems were related to his work environment.

Mr. Hodge said he wants to discuss other options before undergoing further surgery. He has reached out to Dr. Walsh, who now works in Chicago, for a consultation. Regarding his requests for various physician panels, he admitted never being diagnosed with cancer or any asbestos-related disease. He further admitted memory problems since his surgery in 2016, and his memory has worsened over time.

Mr. Hodge offered the testimony of Walter Myers, who also worked at Alcoa and observed the work of brick masons. Brick masons were exposed to aluminum,

---

[1] By agreement, the cases were consolidated.

asbestos, bauxite, and other toxins at work. He confirmed that Alcoa did not provide protective clothing or respirators.

Adrianne Stoltenberg, an industrial hygienist at Arconic, testified that Alcoa generally conducted a pre-employment physical of an employee to establish the employee's health status at the time of hire. During employment, an employee's exposure levels would be monitored if exposure levels reached a certain threshold. However, Ms. Stoltenberg was unable to find any records related to Mr. Hodge's employment and potential exposure levels. Ms. Stoltenberg acknowledged that aluminum dust, aluminum oxide, bauxite, silica, coal tar pitch, creosote, and potentially manganese and carbon dust were present at Alcoa. She further agreed it was reasonable for an employee exposed to various toxins to undergo yearly evaluations by the employee's primary-care physician.

### Findings of Fact and Conclusions of Law

At the Expedited Hearing stage, Mr. Hodge must prove he is likely to prevail at a compensation hearing that he is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Notice*

In occupational disease cases, the employee must give notice within 30 days of the "first distinct manifestation" of disease as required in Tennessee Code Annotated section 50-6-305. *Id*. § 50-6-305(a); *Pool v. Jarmon D&Q Transp.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 9, at *9 (Feb. 18, 2016).

Notice of an occupational illness is tolled if an employee is reasonably unaware that the condition is work-related. *Wilson v. O.G. Kelley & Co.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 13, at *9 (Mar. 15, 2019). "Usually, the first manifestation is considered to occur when there is a diagnosis from a physician and the employee knows or should know that his problems are work-related." *Id*. at *10.

Mr. Hodge filed a petition for impaired memory, poor attention and concentration, and shortness of breath, identifying an injury date of December 27, 2023, and notice given on January 4, 2024. He amended his petition on September 17, adding additional conditions of cerebral meningioma, visual field defect, impaired memory, and loss of smell and taste. In his amended petition, he listed an injury date of August 21, 2024, and that he gave notice on August 29.

5

In the reverse petitions filed by Alcoa/Arconic, it listed Mr. Hodges's injury dates as June 1, 2016; December 27, 2023; and August 21, 2024. It also stated that Mr. Hodge gave notice on January 4, 2024, and August 29, 2024, respectively. Alcoa/Arconic acknowledged timely notice except for its asserted injury date.

Thus, based on *Wilson,* the Court finds that Mr. Hodge is likely to prevail at a compensation hearing that he gave timely notice of his occupational illnesses.

*Statute of Limitations*

Tennessee Code Annotated section 50-6-306(a) provides that the statute of limitations for an occupational disease claim begins to run as of the date of the beginning of the incapacity for work. Moreover, "the partial or total incapacity for work . . . resulting from an occupational disease . . . shall be treated as the happening of an injury by accident[.]" *Morgan v. Lockheed Martin Corp.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 76, at *6 (Dec. 3, 2019).

The Appeals Board wrote: "[A]n incapacity for work resulting from an occupational disease begins when such occupational disease, *with the knowledge of the employee*, or knowledge that he should have had in the exercise of reasonable caution, . . . has injuriously affected his capacity to work to a degree amounting to a compensable injury." *Id.* at *6 (Emphasis added) (quotations omitted).

Here, Mr. Hodge was exposed to various toxins at work for Alcoa/Arconic. In 2016, he was diagnosed with cerebral meningioma and required surgery. He also suffered vision loss in his left eye and memory loss. Arconic's evaluating physician, Dr. Tutor, determined that Mr. Hodge's conditions were not related to his employment but concluded the residual conditions prevented him from returning to work. At that time, none of Mr. Hodge's treating physicians related his brain tumor and resulting conditions to work exposures.

On December 27, 2023, Mr. Hodge saw Dr. Salekin, who first suggested that his impaired short-term memory, difficulty with attention and concentration, and shortness of breath were related to occupational exposures. Mr. Hodge filed his first petition on January 4, 2024, seeking benefits for impaired memory, poor attention and concentration, and shortness of breath.

At Dr. Salekin's recommendation, Mr. Hodge came under the care of neurologist Dr. Hussein in April 2024, who ordered a brain MRI then made a referral

to a neurosurgeon. Mr. Hodge saw neurosurgeon Dr. Gallati on August 21, 2024, and learned that his brain tumor had grossly increased in size from 2017 to 2024. Mr. Hodge amended his petition on September 17, adding cerebral meningioma, visual field defect, impaired memory, and anosmia.

Applying *Morgan*, Mr. Hodge first knew of his "incapacity for work," resulting from his memory loss, attention and concentration difficulties, and shortness of breath, on December 27, 2023. Thus, his filing of his petition on January 4, 2024, was timely.

Similarly, under *Morgan*, Mr. Hodge first knew of his "incapacity for work," resulting from his cerebral meningioma, visual field defect, and loss of smell and taste, on August 21, 2024. He gave notice on August 29 according to his amended petition. The amendment of his petition on September 17, 2024, was timely.

Thus, the Court finds that Mr. Hodge is likely to prevail at a compensation hearing that his claim is not barred by the statute of limitations.

Although Mr. Hodge voluntarily dismissed his case in July 2025, Alcoa's/Arconic's reverse petitions filed August 2025 revived his case under section 50-6-239(c)(3) and Tennessee Compilation Rules and Regulations 0800-02-21-.24 (2026).

*Medical Benefits*

Sections 50-6-301(a)(1)-(2) provide that the partial or total incapacity for work resulting from an occupational disease shall be treated as the happening of an injury by accident, and the employee shall be entitled to compensation, including the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident.

To recover medical benefits, Mr. Hodge must prove that his occupational illnesses, treated as an injury by accident, arose primarily out of and in the course and scope of his employment. He must show, by expert medical opinion, that his employment contributed more than 50% in causing the injury and need for treatment, considering all causes. *Id.* § 50-6-102(12)(A)-(D).

Mr. Hodge offered the unrefuted medical opinions of Drs. Hussein and Salekin. Dr. Hussein determined that Mr. Hodge suffered a meningioma and cognitive deficits secondary to aluminum exposure at work. Dr. Hussein concluded

7

that the employment, more likely than not, was primarily responsible for the injury or primarily responsible for the need for treatment. Dr. Salekin found that Mr. Hodge had a visual field defect, impaired memory, and poor attention, which he attributed to work exposures. Dr. Salekin also determined that Mr. Hodge's cognitive impairment and meningioma were caused by aluminum and polycyclic aromatic hydrocarbon exposure at work.

Thus, the Court finds that Mr. Hodge is likely to prevail at a compensation hearing that he is entitled to medical benefits for his occupational illnesses of cerebral meningioma, vision loss, and cognitive impairments. Having established care with Drs. Hussein and Kouser, Alcoa/Arconic shall furnish ongoing treatment under section 50-6-204 with both physicians as the authorized treating physicians. *See Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *18-19 (May 25, 2016).

**IT IS, THEREFORE, ORDERED:**

1. Alcoa/Arconic shall provide Mr. Hodge medical treatment under Tennessee Code Annotated section 50-6-204. Drs. Hussein and Kouser shall become authorized treating physicians.

2. The parties shall appear for a Status/Scheduling Hearing on **August 3, 2026**, at **1:00 p.m. Eastern Time**. The parties must dial 855-543-5041 to participate.

3. Unless appealed, compliance must occur by seven business days of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3).

ENTERED April 29, 2026.

**JUDGE PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

8

# APPENDIX

The technical record consists of all documents filed on the TNComp electronic filing system.[2]

*Exhibits:*
1. Employer's responses to admissions
2. Deposition of Adrianne Stoltenberg
3. Form C-32 of Dr. Salekin with attachments
4. Form C-32 of Dr. Hussein with attachments (including causation letter)
5. Medical Records with Table of Contents

# CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on April 29, 2026.

| Name | Email | Service sent to: |
|------|-------|------------------|
| David H. Dunaway, Employee's Attorney | X | dhdunaway@aol.com |
| Tiffany S. Hranicky, Employer's Attorney | X | tbhranicky@mijs.com |

*Penny Shrum*

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

---

[2] Mr. Hodge asked the Court to take judicial notice of "certain publicly available documents and adjudicative facts." They included findings of the Tennessee Supreme Court in a 2008 opinion arising from a wrongful death negligence claim and/or matters discussed in a January 2014 press release from the U.S. Securities and Exchange Commission. The motion was taken under advisement. The Court denies the motion, concluding they are not relevant.

9



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____ , certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____ , 20 _____ .

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month        Medical/Dental  $ _____ per month

Groceries         $ _____ per month          Telephone      $ _____ per month

Electricity       $ _____ per month          School Supplies $ _____ per month

Water             $ _____ per month          Clothing       $ _____ per month

Gas               $ _____ per month          Child Care     $ _____ per month

Transportation   $ _____ per month           Child Support  $ _____ per month

Car               $_____ per month

Other             $ _____ per month (describe: _____ )

10. Assets:

Automobile             $ _____      (FMV) _____

Checking/Savings Acct. $ _____

House                  $ _____      (FMV) _____

Other                  $ _____      Describe:_____

11. My debts are:

Amount Owed                     To Whom

_____             _____

_____             _____

_____             _____

_____             _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____